FILED
2021 Mar-05  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RAM HOTEL MANAGEMENT, LLC; RAM HOSPITALITY, LLC; RAJCHANDRA HOTEL, LLC; RAM RIVERFRONT HOSPITALITY, LLC; RAM AUBURN HOSPITALITY, LLC; RAM MONTGOMERY HOSPITALITY, LLC; RAM EUFAULA HOSPITALITY, LLC; RAJGURU HOTEL, LLC; RAM BIRMINGHAM HOSPITALITY ONE, LLC; RAM BIRMINGHAM HOSPITALITY TWO, LLC; RAM HOTEL, LLC; RAM AUBURN HOSPITALITY II, LLC; RAM MILLBROOK HOSPITALITY, LLC; RAJSHRIMAD HOTEL, LLC; RAJKRUPA HOTEL, LLC; RAJBHAGWANT HOTEL, LLC; RAJRAICHAND HOTEL, LLC; LANETT HOTEL MANAGEMENT, LLC; RAM PRATTVILLE HOSPITALITY, LLC; RAJRISHAB HOTEL, LLC; RAJSAMBHAV HOTEL, LLC; RAJAJIT HOTEL, LLC, *Plaintiffs*, v. HARTFORD FIRE INSURANCE COMPANY; CITY OF BIRMINGHAM, *Defendants*. | Case No. 2:21-CV-_____ |

## NOTICE OF REMOVAL

Defendant Hartford Fire Insurance Company ("HFIC"), by and through its

undersigned counsel, hereby provides notice pursuant to 28 U.S.C. §§ 1332, 1441,

and 1446 of the removal of *RAM Hotel Management LLC, et al. v. Hartford Fire Insurance Company, et al.*, Case No. 01-CV-2021-900391.00, from the Circuit Court of Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division. Federal diversity jurisdiction exists because information provided in the Complaint and publicly available indicates that there is complete diversity among the properly joined parties and that the amount in controversy exceeds $75,000. The properly joined parties include Plaintiffs and Hartford Fire. The City of Birmingham is fraudulently joined because the claims against it are impossible or, in the alternative, the they are entirely unrelated to the insurance coverage dispute between Plaintiffs and Hartford Fire and should be severed. Pursuant to 28 U.S.C. § 1446(a), HFIC provides the following plain statement of the grounds for removal:

## I.    BACKGROUND

1.    On February 4, 2021, Plaintiffs[1] filed a Complaint in the Circuit Court of Jefferson County, Alabama, in the civil action styled *RAM Hotel Management LLC, et al. v. Hartford Fire Insurance Co., et al.*, Case No. 01-CV-2021-900391.00

---

[1]    Plaintiffs are 22 limited liability companies: RAM Hotel Management, LLC; RAM Hospitality, LLC; RajChandra Hotel, LLC; RAM Riverfront Hospitality, LLC; RAM Auburn Hospitality, LLC; RAM Montgomery Hospitality, LLC; RAM Eufaula Hospitality, LLC; RajGuru Hotel, LLC; RAM Birmingham Hospitality One, LLC; RAM Birmingham Hospitality Two, LLC; RAM Hotel, LLC; RAM Auburn Hospitality II, LLC; RAM Millbrook Hospitality, LLC; RajShrimad Hotel, LLC; RajKrupa Hotel, LLC; RajBhagwant Hotel, LLC; RajRaichand Hotel, LLC; Lanett Hotel Management, LLC; RAM Prattville Hospitality, LLC; RajRishab Hotel, LLC; RajSambhav Hotel, LLC; and RajAjit Hotel, LLC.

("State Court Action"). HFIC was served with the Complaint on February 5, 2021.

2.      On March 2, 2021, Plaintiffs filed their First Amended Complaint ("FAC"). In the FAC, Plaintiffs allege that HFIC issued a business insurance policy to RAM Hotel Management, LLC in 2019 and renewed the policy in 2020 (collectively, the "Policies"), and that the Policies insured all Plaintiffs. (FAC ¶¶ 7, 15.) Plaintiffs allege that they lost business income as a result of the COVID-19 pandemic and the governmental orders issued in response to it. (*Id.* ¶¶ 22–23, 25.) Plaintiffs assert that these losses are covered by the Policies. (*See id.* ¶ 24.)

3.      Plaintiffs assert three causes of action against HFIC in the FAC. Count One seeks a declaratory judgment that the Policies provide coverage for certain alleged COVID-19-related losses. (*See id.* ¶¶ 28–38). Count Two alleges HFIC breached the insurance contract with Plaintiffs and seeks at least $13,000,000 in alleged lost profits. (*See id.* ¶¶ 39–41.) Count Three asserts that HFIC acted in bad faith and is liable for both alleged lost profits as well as punitive damages. (*See id.* ¶¶ 42–46.)

4.      This action is properly removed. The procedural requirements of removal have been met, and information that was provided by Plaintiffs in the FAC, made publicly available, or associated with the Policies shows that this Court has subject-matter jurisdiction.

## II.    THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE MET

5.    True and correct copies of all process, pleadings, and orders served on HFIC in the State Court Action are attached as Exhibit A to this Notice. 28 U.S.C. § 1446(a).

6.    This Notice of Removal is filed within thirty (30) days after the receipt by HFIC, through service, of a copy of the Complaint in the State Court Action. Accordingly, removal is timely. 28 U.S.C. § 1446(b).

7.    This Court presides in the locality in which the State Court Action was filed. It is therefore a proper forum for removal. 28 U.S.C. § 97(a).

8.    No properly joined defendant is a citizen of Alabama, the state where this action was brought. 28 U.S.C. § 1441(b)(2).

9.    A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will be promptly served on Plaintiffs' counsel and filed with the Clerk of Court for the Circuit Court of Jefferson County, Alabama. *See* 28 U.S.C. § 1446(d).

## III.    THIS COURT HAS SUBJECT-MATTER JURISDICTION

10.    An action may be removed from state court to federal court if the action could have originally been brought in federal court. 28 U.S.C. § 1441(a). Here, federal jurisdiction exists based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000 and because the

appropriate parties to this dispute are citizens of different states.

## A.    The Amount in Controversy is Satisfied

11.    The amount in controversy in this action exceeds the $75,000 threshold required by 28 U.S.C. § 1332(a).

12.    Removal is proper when it is "'facially apparent' from the pleading itself that the amount in controversy exceeds" $75,000. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061–62 (quoting *Pretka*, 608 F.3d at 770). Likewise, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062.

13.    Here, the amount "in controversy" exceeds $75,000, exclusive of interest and costs,[2] for three reasons.

14.    *First*, in Count Two of their FAC, Plaintiffs allege they have "sustained

---

[2]    HFIC denies Plaintiffs' allegations and denies that they are entitled to any relief against HFIC. That said, in evaluating whether diversity jurisdiction exists, the relevant inquiry is the amount "in controversy"—not Plaintiffs' likelihood of success on the merits. *See Pretka*, 608 F.3d at 751 ("[A] plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are likely to recover." (citation omitted)).

losses and damages," including supposed "lost profits," as a result of HFIC's determination that the Policies do not provide coverage. (FAC ¶ 41.) Plaintiffs allege that their "lost profits to date have exceeded $13,000,000." (*Id.*; *see id.* ¶ 25.) They also allege that "their lost profits damages will exceed $26,000,000." (*Id.* ¶ 25.) Plaintiffs demand their supposed lost profits as a form of compensatory damages. (*Id.* at "wherefore" paragraph following ¶ 41.)

15.     *Second*, in Count Three of their FAC, Plaintiffs demand punitive damages on top of compensatory damages. (*Id*. at "wherefore" paragraph following ¶ 46.) In determining the amount in controversy, a court must consider such a request for punitive damages "unless it is apparent to a legal certainty that [punitive damages] cannot be recovered." *Blackwell v. Great Am. Fin. Res., Inc.*, 620 F. Supp. 2d 1289, 1290 (N.D. Ala. 2009) (quoting *Holley Equip. Co. v. Credit Alliance Corp*., 821 F.2d 1531, 1535 (11th Cir. 1987) (per curiam)). Plaintiffs' alleged compensatory damages alone easily exceed $75,000. When combined with the request for punitive damages, it is even more certain the amount in controversy exceeds $75,000. *See Robinson v. Affirmative Ins. Holdings, Inc.*, No. 12-cv-2159, 2013 WL 838285, at *5 (N.D. Ala. Mar. 1, 2013) (denying a motion to remand when the complaint sought emotional-distress damages and punitive damages, even though the complaint sought only $12,000 or so in "hard damages"); *Blackwell*, 620 F. Supp. 2d at 1291–92 (denying a motion to remand when a complaint sought punitive damages, even

though only $23,172 in compensatory damages were at issue).[3]

16.     *Third*, Plaintiffs' failure to disclaim entitlement to more than $75,000 supports a determination that more than $75,000 is in controversy. As a court in this District has warned, plaintiffs "who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages … , must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that [they] will never accept more." *Smith v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1333, 1335 (N.D. Ala. 2012). Otherwise, the plaintiffs will find themselves in a federal court. *Id.*; *see Seckel v. Travelers Home & Marine Ins. Co.*, No. 12-cv-4163, 2013 WL 360421, at *2 (N.D. Ala. Jan. 29, 2013).

17.     In sum, Plaintiffs' demand for compensatory and punitive damages, as well as their failure to disclaim any entitlement to more than $75,000, establish that the amount in controversy exceeds the jurisdictional threshold. *See* 28 U.S.C. § 1446(c)(2)(B).

**B.     There is Complete Diversity of Citizenship Between the Properly Joined Parties**

18.     As discussed below in Section II.C, Plaintiffs and HFIC are the only

---

[3]     A district court may consider decisions rendered in cases involving similar claims and demands for punitive damages when assessing the amount "in controversy." *See Kennedy v. Fleetwood Enters., Inc.*, No. 07-cv-728, 2007 WL 4287374, at *3 (M.D. Ala. Dec. 5, 2007).

proper parties to this lawsuit. Based on information that was provided by Plaintiffs in the FAC, made publicly available, or associated with the Policies, HFIC believes that the properly joined parties are completely diverse from one another.

19.    RAM Hotel Management, LLC is a limited liability company organized under Georgia law. HFIC's reasonable investigation of publicly available records and documents associated with the Policies indicates that all of the members of RAM Hotel Management, LLC are citizens of Georgia. Its members are Rinkesh Patel, Mitesh Patel, and Prakashchandra Patel.

20.    RAM Hospitality, LLC is a limited liability company organized under Alabama law. Its members are Rinkesh Patel, Mitesh Patel, and Kalpana Desai.

21.    RajChandra Hotel, LLC is a limited liability company organized under Alabama law. Its members are Rinkesh Patel and Mitesh Patel.

22.    RAM Riverfront Hospitality, LLC is a limited liability company organized under Alabama law. Its members are Rinkesh Patel, Mitesh Patel, Amita Desai, Raju Sundari, and Kishor Desai.

23.    RAM Auburn Hospitality, LLC is a limited liability company organized under Alabama law. Its members are Rinkesh Patel and Mitesh Patel.

24.    RAM Montgomery Hospitality, LLC is a limited liability company organized under Alabama law. Its members are Rinkesh Patel and Mitesh Patel.

25.     RAM Eufaula Hospitality, LLC is a limited liability company orga-
nized under Alabama law. Its member is Rinkesh Patel.

26.     RajGuru Hotel, LLC is a limited liability company organized under
Georgia law. Its members are Rinkesh Patel and Mitesh Patel.

27.     RAM Birmingham Hospitality One, LLC is a limited liability company
organized under Alabama law. Its member is Rinkesh Patel.

28.     RAM Birmingham Hospitality Two, LLC is a limited liability company
organized under Alabama law. Its member is Rinkesh Patel.

29.     RAM Hotel, LLC is a limited liability company organized under Ala-
bama law. Its member is Rinkesh Patel.

30.     RAM Auburn Hospitality II, LLC is a limited liability company orga-
nized under Alabama law. Its member is Rinkesh Patel.

31.     RAM Millbrook Hospitality, LLC is a limited liability company orga-
nized under Alabama law. Its member is Rinkesh Patel.

32.     RajShrimad Hotel, LLC is a limited liability company organized under
Alabama law. Its member is Rinkesh Patel.

33.     RajKrupa Hotel, LLC is a limited liability company organized under
Alabama law. Its members are Rinkesh Patel, Prakashchandra Patel, and Sagar Patel.

34.     RajBhagwant Hotel, LLC is a limited liability company organized un-
der Alabama law. Its member is Rinkesh Patel.

35.     RajRaichand Hotel, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

36.     Lanett Hotel Management, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

37.     RAM Prattville Hospitality, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

38.     RajRishab Hotel, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

39.     RajSambhav Hotel, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

40.     RajAjit Hotel, LLC is a limited liability company organized under Alabama law. Its member is Rinkesh Patel.

41.     Rinkesh Patel is a citizen and resident of the State of Georgia. He is domiciled in that State.

42.     Mitesh Patel is a citizen and resident of the State of Georgia. He is domiciled in that State.

43.     Kalpana Desai is a citizen and resident of the State of Georgia. She is domiciled in that State.

44.     Prakashchandra Patel is a citizen and resident of the State of Georgia. He is domiciled in that State.

45.     Sagar Patel is a citizen and resident of the State of Alabama. He is domiciled in that State.

46.     Amita Desai is a citizen and resident of the State of Georgia. She is domiciled in that State.

47.     Raju Sundari is a citizen and resident of the State of Georgia. She is domiciled in that State.

48.     Kishor Desai is a citizen and resident of the State of Georgia. He is domiciled in that State.

49.     For the purpose of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Thus, based on the citizenship of their members, all Plaintiffs are citizens of Georgia, and RajKrupa Hotel, LLC is also a citizen of Alabama. None are citizens of Connecticut.

50.     HFIC is organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. As a result, HFIC is a citizen of Connecticut. *See* 28 U.S.C. § 1332(c)(1). Further, HFIC is not a citizen of Alabama or Georgia under the Acts of Congress relating to removal of cases.

51.     Because information that was provided by Plaintiffs in the FAC and made publicly available shows that Plaintiffs are citizens of states different than the

citizenship state of the only defendant whose citizenship may be considered for purposes of diversity jurisdiction (see below), this action is "between—(1) citizens of different States." 28 U.S.C. § 1332(a)(1). As a result, Section 1332's requirement of complete diversity has been satisfied.

## C.   The City of Birmingham Does Not Destroy Complete Diversity Because It Was Fraudulently Joined

52.   Four Plaintiffs—RAM Birmingham Hospitality One, LLC, RAM Birmingham Hospitality Two, LLC, RajSambhav Hotel, LLC, and RajAjit Hotel, LLC (together, "the Birmingham Plaintiffs")—assert causes of action against the City of Birmingham, Alabama. Those causes of action stem from the City's adoption of a March 24, 2020, Shelter-in-Place Ordinance that restricted certain activities in the City.[4]

53.   In Count Four of the FAC, the Birmingham Plaintiffs allege that the City "failed to investigate adequately the harm the coronavirus posed to the public" and "should have adopted less restrictive methods for addressing the spread of the coronavirus." (FAC ¶¶ 48–49.) The Birmingham Plaintiffs also allege that the City "failed to investigate adequately" economic harms that a shelter-in-place ordinance would cause. (*Id.* ¶ 48.) In essence, they contend that the costs of the City's March

---

[4]   The March 24, 2020, Shelter-in-Place Ordinance is referenced in, and integral to, the Complaint. (*See* FAC ¶ 20.) A copy of the Shelter-in-Place Ordinance is Exhibit B to this Notice of Removal, and it is publicly available online at https://www.birminghamal.gov/wp-content/uploads/2020/03/2020.3.24.City-of-Birmingham.Shelter-In-Place-Ordinance.pdf.

24, 2020, Shelter-in-Place Ordinance outweighed that ordinance's benefits. (*See id.* ¶ 49.) The Birmingham Plaintiffs thus seek to recover damages—including lost profits—from the City. (*Id.* at p. 15.)

54.     In Count Five of the FAC, the Birmingham Plaintiffs allege the City adopted the March 24, 2020, Shelter-in-Place Ordinance without giving them "a meaningful opportunity to be heard" and in violation of Alabama law. (*Id.* ¶ 53.) Once again, the Birmingham Plaintiffs thus seek to recover damages—including lost profits—from the City. (*Id.* at "wherefore" paragraph following ¶ 55.)

55.     In Count Six of the FAC, the Birmingham Plaintiffs seek a declaratory judgment that the acts alleged in Counts Four and Five violated the law. (*Id.* ¶¶ 56–57.) And in Count Seven of the FAC, the Birmingham Plaintiffs seek a permanent injunction against another Shelter-in-Place Order. (*Id.* ¶¶ 59–62.)

56.     Although the City of Birmingham is a putative defendant to this action, its joinder does not preclude diversity jurisdiction in this action. Instead, this Court must ignore the City's presence because Plaintiffs made the City a defendant solely to defeat federal diversity jurisdiction.

57.     When evaluating whether it has diversity jurisdiction, this Court must ignore the presence of the fraudulently joined non-diverse defendant. *See Calvert v. XTRA Lease, LLC*, No. 18-cv-1108, 2018 WL 6725328, at \*1 (N.D. Ala. Dec. 21, 2018) (citing *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir.

2006)). The doctrine applies when "'there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.'" *Brawley v. Nw. Mut. Life Ins. Co.*, 288 F. Supp. 3d 1277, 1285 (N.D. Ala. 2017) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). The removing party has the burden of showing fraudulent joinder by clear and convincing evidence. *Id.*

58.     The fraudulent-joinder analysis is "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Drummond Co. v. Gen. Reinsurance Corp.*, No. 15-cv-1806, 2016 WL 4993276, at *4 (N.D. Ala. Sept. 19, 2016). If, given those materials, there is "'a possibility that a state court would find that the complaint states a cause of action against … the resident defendant[],'" then joinder was proper. *Brawley*, 288 F. Supp. 3d at 1286 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)) (emphasis omitted). "'The potential for legal liability,'" however, "'must be reasonable, not merely theoretical,'" to warrant a remand to state court. *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 870 (11th Cir. 2015) (per curiam) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005)).

59.     For the reasons discussed below, the Birmingham Plaintiffs have no possibility of stating a valid claim against the City of Birmingham. Thus, this Court must disregard the City's citizenship when determining whether this case is removable.

### 1. The City of Birmingham had the statutory authority to enact the March 24, 2020, Shelter-in Place Ordinance

60.     In Count Five of the FAC, the Birmingham Plaintiffs make a conclusory assertion that the City adopted the Shelter-in-Place Ordinance "in violation of Alabama statutory law." (FAC ¶ 53.) Yet the statutory provisions the Birmingham Plaintiffs cite reveal that the City had the statutory authority to enact the Shelter-in-Place Ordinance. There is no possibility that the Birmingham Plaintiffs could prove otherwise.

61.     The City is a political subdivision of the State of Alabama. *See Alexander v. State ex rel. Carver*, 150 So. 2d 204, 206 (Ala. 1963). Its governing body is the Birmingham City Council. *See* ALA. CODE §§ 45-37A-52.31, 45-37A-52.56.

62.     As the City's governing body, the Birmingham City Council has well-established authority to protect public health. That authority is found in at least three provisions of the Alabama Code, and those statutes reflect the truism that "'a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.'" *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 466 (5th Cir. 2021) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905)).

63.     *First*, Alabama Code § 11-45-1 provides that municipalities "may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state … to provide for the safety, preserve the health, promote the prosperity." ALA. CODE § 11-45-1. Plaintiffs do not allege (and cannot show) that the Shelter-in-Place

Ordinance conflicted with any other Alabama law.

64.     *Second*, under Alabama Code § 11-47-131, "all cities" have the power: "(1) To prevent the introduction of contagious, infectious, or pestilential diseases into such cities or towns; (2) To establish and regulate a sufficient quarantine, not inconsistent with laws of the state, in the towns and cities and within the police jurisdiction thereof and to punish any breach of quarantine law; [and] (3) To adopt such ordinances and regulations as the council or other governing body may deem necessary to insure good sanitary condition in public places or in private premises in the cities and towns[.]" ALA. CODE § 11-47-131. Given that plain language, Plaintiffs' cannot show that the City violated § 11-47-131; that provision *empowers* the City to enact the Shelter-in-Place Ordinance.

65.     *Third*, under Alabama Code §§ 31-9-2 and 31-9-10, if the Birmingham City Council determines that "disasters or emergencies of unprecedented size and destructiveness" (resulting from "hostile action" or "natural causes"), ALA. CODE § 31-9-2(a), then the Birmingham City Council may "impose a public safety curfew for its inhabitants," *id.* § 31-9-10(b)(5)(b). Under that authority, the Birmingham City Council adopted the Shelter-in-Place Ordinance on March 24, 2020. In that ordinance, the City Council found that "an emergency of unprecedented size resulting from the natural cause of community spread of a novel human coronavirus disease, COVID-19, has occurred in the City of Birmingham." The City Council also found

- 16 -

it was "in the best interest of the public peace, health, and safety … to impose a public safety curfew." To that end, it enacted the Shelter-in-Place Ordinance.

66.     Given the plain language of these statutes, there is no possibility that the Birmingham Plaintiffs can show that the City violated Alabama statutory law by enacting the Shelter-in-Place Ordinance.

### 2.   The City of Birmingham did not violate procedural due process when it enacted the March 24, 2020, Shelter-in Place Ordinance

67.     The Birmingham Plaintiffs also reference "due process" and allege that the City "denied [them] a meaningful opportunity to be heard" before it enacted the Shelter-in-Place Ordinance. (FAC ¶ 53.) Those are apparent references to procedural—not substantive—due process. *Cf. Bush v. Secretary, Fla. Dep't of Corr.*, 888 F.3d 1188, 1196–97 (11th Cir. 2018) (discussing procedural and substantive due process). There is, however, no possibility that the Birmingham Plaintiffs can state a valid procedural due-process claim against the City.

68.     In procedural-due-process cases, the U.S. Supreme Court "has long distinguished between legislative and adjudicative action." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1048 (11th Cir. 2020) (en banc) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915)). And when a legislature enacts legislation through the legislative process, "the affected persons are not entitled to *any* process beyond that provided by the legislative process." *Id.*; *see also 75 Acres,*

*LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1294 (11th Cir. 2003) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." (citation omitted)).

69.    The Alabama Supreme Court "'has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution.'" *Ala. State Pers. Bd. v. Garner*, 4 So. 3d 545, 550 n.2 (Ala. Civ. App. 2008) (quoting *Vista Land & Equip., L.L.C. v. Computer Progress & Sys., Inc.*, 953 So. 2d 1170, 1174 (Ala. 2006)); *see, e.g.*, *Facebook, Inc. v. K.G.S.*, 294 So. 3d 122, 131 (Ala. 2019); *Jefferson Cnty. v. Braswell*, 407 So. 2d 115, 122 (Ala. 1981) ("We consider our analysis of the … due process issues under the United States Constitution equally applicable to those same issues under the Alabama Constitution."). Thus, under Alabama law, when a legislature takes a legislative action, the legislative process *is* due process. *Cf.* ALA. CONST. art. I, §§ 6, 13 (guaranteeing due process in *adjudicative* actions); *Ex parte Med. Licensure Comm'n of Ala.*, 13 So. 3d 397, 405 (Ala. Civ. App. 2008) (explaining that "[t]he process that is due depends on," in part, "the nature of the proceedings").

70.    The March 24, 2020, Shelter-in-Place Ordinance was a legislative act. The Birmingham City Council—which has the City's "legislative powers"—enacted the Ordinance. ALA. CODE § 11-43-43. In doing so, the City Council exercised its

legislative judgment about how best to protect the public as a whole. The Ordinance applied generally; it was not targeted at a particular group. And the Ordinance applied prospectively only—not retroactively. Those facts are hallmarks of legislation. *See 75 Acre*, 338 F.3d at 1296; *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1289 (11th Cir. 2020) (Lagoa, J., concurring).

71.     Because the Shelter-in-Place Ordinance was a legislative act, the Birmingham Plaintiffs received due process of law. *See Jones*, 975 F.3d at 1048. "The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic*, 239 U.S. at 445. Instead, the Birmingham Plaintiffs' interests "are protected in the only way that they can be in a complex society" facing an emergency: "by their power, immediate or remote, over those who make the rule." *Id.* That is, in the next election cycle, the Birmingham Plaintiffs can oppose the re-election of the members of the Birmingham City Council.

72.     For these reasons, it does not matter whether the Birmingham Plaintiffs had a chance to address the City Council before it adopted the Shelter-in-Place Ordinance. Moreover, the Birmingham Plaintiffs allege no facts about how the City Council adopted the Shelter-in-Place Ordinance, and they do not allege that the City Council failed to follow the proper legislative procedures.

73.     As a result, there is no possibility that the City violated procedural due process when it enacted the March 24, 2020, Shelter-in-Place Ordinance.

### 3. The City of Birmingham did not violate substantive due process when it enacted the March 24, 2020, Shelter-in Place Ordinance

74.     The Birmingham Plaintiffs might respond to this Notice of Removal by trying to construe Count Five as asserting a substantive-due-process claim. Though Count Five at most references procedural due process, there is no possibility that any substantive-due-process claim would survive.

75.     The Birmingham Plaintiffs do not allege that the March 24, 2020, Shelter-in-Place Ordinance burdens their fundamental rights. Instead, they assert that the Shelter-in-Place Ordinance affected their economic interests. Alabama courts, however, uphold rules governing the economy if there is "'any state of facts either known or which could reasonably be assumed,' that would establish a rational relationship" between the law and "a legitimate state interest." *Ala. Power Co. v. Citizens of State*, 740 So. 2d 371, 381 (Ala. 1999) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)).

76.     The City has a *compelling* interest in protecting the public from disease. Given the facts that the City Council knew or could have known, it was indisputably reasonable for the City to enact the Shelter-in-Place Ordinance. *See Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 885 (N.D. Ill. 2020) (stating that COVID-19 orders would "easily" pass rational-basis review); *910 E Main LLC v. Edwards*, 481 F. Supp. 3d 607, 621 (W.D. La. 2020) (similar), *aff'd sub nom. Big Tyme Invs.*, 985 F.3d 456 (5th Cir. 2021). This indisputable reasonableness is especially true given

the medical and scientific uncertainties that were especially present in the early days of the COVID-19 pandemic. Plaintiffs cannot show otherwise, so courts should not second-guess politically accountable officials about how best to protect the public health. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief).

77.     The Birmingham Plaintiffs therefore have no possibility of maintaining a substantive-due-process claim against the City.

### 4.  The City of Birmingham is entitled to substantive immunity.

78.     Apart from the defects in their constitutional and statutory theories, the Birmingham Plaintiffs also cannot maintain their tort claims against the City.

79.     In Counts Four and Five of their FAC, the Birmingham Plaintiffs allege that the City "negligently," "carelessly," and "arbitrarily" enacted the Shelter-in-Place Order. (FAC ¶¶ 48, 53.) Based on those assertions, the Birmingham Plaintiffs seek to recover money damages, including alleged "lost profits," from the City. (*Id.* at pp. 15–16.)

80.     In determining whether these tort claims are valid, "'there must first be a breach of a legal duty.'" *Ex parte City of Tuskegee*, 295 So. 3d 625, 639 (Ala. 2019) (quoting *Hilliard v. City of Huntsville*, 585 So. 2d 889, 890 (Ala. 1991)). Under Alabama law, though, "the lack of anything other than an incidental duty to a

particular individual prevents the municipality from being liable for damages, because a breach of a duty owed to the general public will not form the basis for a negligence claim by an individual citizen." *Bill Salter Advert., Inc. v. City of Atmore*, 79 So. 3d 646, 652 (Ala. Civ. App. 2010).[5]

81.    This is known as the substantive-immunity doctrine. Under that doctrine, cities have immunity "in the context of those public service activities … so laden with the public interest as to outweigh the incidental duty to individual citizens." *Rich v. City of Mobile*, 410 So. 2d 385, 387–88 (Ala. 1982). Thus, "public policy considerations 'prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.'" *Hilliard*, 585 So. 2d at 891 (quoting *Rich*, 410 So. 2d at 387); *see Ex parte City of Tuskegee*, 295 So. 3d at 639. And at the very least, this immunity "recognizes that a city's obligation to provide for the public health, safety, and general welfare of its citizens is paramount and that the imposition of liability to particular individ-

---

5    State law also restricts in other ways when the City can be liable for tort claims. *See* ALA. CODE § 11-47-190 ("*No city or town shall be liable for damages* for injury done to or wrong suffered by any person or corporation, *unless* such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty … ." (emphasis added)).

uals in certain circumstances would necessarily threaten the benefit of certain services to the public at large." *Calogrides v. City of Mobile*, 475 So. 2d 560, 561 (Ala. 1985).

82.     For example, the Southern District of Alabama granted summary judgment for a city on a plaintiff's claim that the city council negligently drafted legislation. *See O'Neal Homes, Inc. v. City of Orange Beach*, No. 06-cv-881, 2008 WL 2163919, at \*17–19 (S.D. Ala. May 14, 2008); *see also, e.g.*, *Bill Salter Advert.*, 79 So. 3d at 653 (holding a municipality immune from a tort claim based on its enforcement of an ordinance); *Payne v. Shelby Cnty. Comm'n*, 12 So. 3d 71, 81 (Ala. Civ. App. 2008) (holding a municipality immune from a tort claim based on its failure to enforce an ordinance).

83.     The City of Birmingham has the authority to protect public health. Exercising that power is essential to public well-being. Imposing tort liability for how the City exercises that power would, at least here, thwart the City's ability to provide public services. Further, the Shelter-in-Place Ordinance benefitted and burdened the public as a whole. It did not single out the Birmingham Plaintiffs for different treatment.

84.     The City did not owe any particular duty to the Birmingham Plaintiffs. Because the City did not owe a duty to the Birmingham Plaintiffs, there is no chance of a successful tort claim against the City. *See Payne*, 12 So. 3d at 79. Whether the

Shelter-in-Place Order was sound policy is a question for the executive and legislative branches—not the judiciary. *Cf. Calogrides*, 475 So. 2d at 561.

### 5. The Birmingham Plaintiffs are not entitled to a declaratory judgment

85.     In Count Six of their FAC, the Birmingham Plaintiffs seek a declaratory judgment that: (a) the City "negligently, carelessly, and arbitrarily" enacted the Shelter-in-Place Order; (b) the City failed to consider the "economic harm" the Shelter-In-Place Order would cause businesses; (c) the Shelter-In-Place Order was not narrowly tailored to protect the Birmingham Plaintiffs' business interests; and (d) adopting the Shelter-In-Place Order violated due process and Alabama law. (FAC ¶ 57.)

86.     A declaratory-judgment action, however, "does not empower courts to decide moot questions, abstract propositions, or to give advisory opinions." *Magic City Capital, LLC v. Twickenham Place Partners, LLC*, 296 So. 3d 274, 280 (Ala. 2019) (cleaned up). Instead, it is a means for deciding justiciable disputes about "the legal rights, status, and relations of parties." *Surles v. City of Ashville*, 68 So. 3d 89, 93 (Ala. 2011); *see Magic City Capital*, 296 So. 3d at 279–80.

87.     For the reasons explained in Sections III.C.1–C.4 above, the Birmingham Plaintiffs cannot prevail on their tort, statutory, or constitutional theories against the City of Birmingham. Thus, the Birmingham Plaintiffs also have no possibility of obtaining a declaratory judgment against the City.

### 6. The Birmingham Plaintiffs are not entitled to an injunction

88.    In Count Seven of their FAC, the Birmingham Plaintiffs seek a perma-

nent injunction prohibiting the City "from violating the due process requirements of

the Alabama Constitution or Sections 31-9-2, 31-9-10, and 11-47-131 of the Code

of Alabama in adopting any" shelter-in-place orders in the future. (FAC ¶ 61.)

89.    "A request for a permanent injunction," however, "is not cognizable as

a freestanding claim for relief." *Valley Creek Land & Timber, LLC v. Colonial Pipe-*

*line Co.*, 432 F. Supp. 3d 1360, 1369 (N.D. Ala. 2020) (citing *Alabama v. U.S. Army*

*Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005); *see Kirby's Spectrum*

*Collision, Inc. v. Gov't Employees Ins. Co.*, 744 F. Supp. 2d 1220, 1238–39 (S.D.

Ala. 2010) (applying Alabama law).

90.    The Birmingham Plaintiffs cannot maintain any of their underlying

causes of action against the City for all of the reasons explained in Sections III.C.1–

C.4 above. Accordingly, the Birmingham Plaintiffs cannot succeed on a request for

permanent injunction based upon any of those causes of action. *See Valley Creek*,

432 F. Supp. 3d at 1369.

91.    Further, Alabama law requires any injunction to be "specific." ALA. R.

CIV. P. 65(d)(2). An injunction that merely requires a person to "obey the law" is not

specific. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1200–01 (11th Cir. 1999);

*cf. Ex parte Novartis Pharm. Corp.*, 975 So. 2d 297, 300 n.2 (Ala. 2007) ("Federal

cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure … ."). In effect, though, the Birmingham Plaintiffs seek an injunction that simply instructs the City to obey the law. Such an injunction would be improper.

92.     Finally, the Birmingham Plaintiffs' request for an injunction is not ripe. They merely allege that the City "may in the future" impose another shelter-in-place order. (FAC ¶ 60.) They do not allege that the City is considering any such order. Nor do they identify the terms of the hypothetical order. Nor do they allege any facts about how the City might analyze and weigh competing interests when adopting any future order. Thus, there is no justiciable controversy about what the City might do in the future. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 894 So. 2d 643, 649 (Ala. 2004) ("A controversy is justiciable when present legal rights are affected, not when a controversy is merely anticipated."); *Baldwin Cnty. v. Palmtree Penthouses, Ltd.*, 831 So. 2d 603, 605 (Ala. 2002) ("Matters that may or may not occur in the future do not present an existing controversy to a plaintiff.").

93.      After disregarding the City, complete diversity between the parties exists, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

## 7.  The City of Birmingham Should Be Severed Because It Was Fraudulently Misjoined

94.     Alternatively, because the City of Birmingham was fraudulently misjoined to this action, the claims against the City should be severed. *See Tapscott v.*

*MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

95.     Joinder of a defendant under Rule 20 of the Federal Rules of Civil Procedure requires (1) a claim for relief asserting joint, several, or alternative liability, (2) arising from the same transaction, occurrence, or series of transactions or occurrences, and (3) a common question of law or fact. FED. R. CIV. P. 20(a)(2). Here, the Birmingham Plaintiffs can meet none of those elements: There is no joint, several, or alternative liability alleged; the claims do not arise from the same transaction; and there are no common questions of fact. Thus, the City has been misjoined.

96.     The City's misjoinder is also "so egregious as to constitute fraudulent joinder." *Tapscott*, 204 F.3d at 1360. There is "no real connection" between the Birmingham Plaintiffs' claims against HFIC and their claims against the City. *Id.*; *see Estate of Carter ex rel. Carter v. SSC Selma Operating Co.*, No. 19-cv-431, 2020 WL 3429040, at *6 (S.D. Ala. June 23, 2020).

97.     The Birmingham Plaintiffs' claims against their property insurer, HFIC, are entirely distinct from the Birmingham Plaintiffs' claims against the City. Counts One through Three are asserted against HFIC and relate to HFIC's purported contractual obligations to the Birmingham Plaintiffs. Counts Four through Seven against the City have no relationship to HFIC's contractual obligations. Rather, they seek to hold the City liable for its own actions associated with adopting the Shelter-

in-Place order.

98.     The claims against HFIC for declaratory judgment, breach of contract, and bad faith all arise under the Policies. (*See* FAC ¶¶ 28–46.) To evaluate those claims, the Court will need to consider the terms of the contract and whether the alleged losses are covered. The Court will *not* need to consider whether the City of Birmingham acted properly in adopting the Shelter-in-Place Order. Simply put, there is no plausible reason the claims against HFIC and the City of Birmingham should be asserted in the same lawsuit.

99.     The only alleged connection between the claims against each defendant is that they all arose out of the coronavirus pandemic. If that were a sufficient basis for joinder, then every person, business, and entity in the United States could potentially be joined in an action. That, of course, is not the law. *See* FED. R. CIV. P. 20(a); ALA. R. CIV. P. 20; *Tapscott*, 204 F.3d at 1360.

100.    Courts have routinely decided that a common disaster affecting a plaintiff's relationship with separate defendants does not alone provide a factual nexus for joinder, including in the context of COVID-19. *See, e.g.*, *Ultimate Hearing Sols. II, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2401 (E.D. Pa. July 8, 2020), ECF No. 3 (severing causes of action based in breach of contract and bad faith "filed by two groups of plaintiffs located in four different states against five insurance companies involving two different contracts of insurance") (attached as Exhibit C);

*Augustine v. Employers Mut. Cas. Co.*, No. 08-cv-1102, 2010 WL 4930317, at *16–17 (W.D. La. Nov. 30, 2010) (stating that property insurer, building contractor, and public adjuster defendants were fraudulently misjoined where only common factual episode was that claims arose out of property damage caused by Hurricane Rita); *Frankland v. State Farm Fire & Cas. Co.*, No. 07-cv-1767, 2008 WL 4072819, at *5 (W.D. La. July 2, 2008) (concluding that private insurance adjuster and home-owner's insurer were misjoined where only common factual episode was hurricane damage), *report and recommendation adopted* (W.D. La. Aug. 26, 2028), ECF No. 30; *Willingham v. State Farm Ins. Co.*, 09-cv-59, 2009 WL 2767679, at *4–5 (N.D. Miss. Aug. 27, 2009) (concluding that home insurer and builder were fraudulently misjoined when bad-faith claims against both arose out of fire damage to the plaintiff's home).

101.   Where there is no procedural basis for including a non-diverse party, like the City here, in the same action as the diverse party, there is a sufficient basis to conclude that the reason for including the non-diverse party was an effort to deprive a defendant of its right to removal. *See Tapscott*, 77 F.3d at 1360 (holding that an attempt to join resident defendants that had "no real connection" with the controversy was "so egregious as to constitute fraudulent joinder").

102.   Because there is no reasonable basis for joinder of the City except to defeat diversity, its joinder wrongfully deprives HFIC of its right to removal.

103.   Accordingly, the claims against the City should be disregarded because they are impossible. In the alternative, the claims against the City should severed from those against HFIC, and the HFIC claims should remain before this Court..

* * * * *

104.   The allegations in this Notice of Removal are true and correct. This cause is within the jurisdiction of the United States District Court for the Northern District of Alabama, and this cause is removable to the United States District Court for the Northern District of Alabama, Southern Division.

105.   If any questions arise about the propriety of the removal of this action, HFIC requests the opportunity to submit a brief, present oral argument, and/or conduct jurisdictional discovery in support of its position that this action is removable.

106.   HFIC reserves all—and does not waive any—claims, defenses, and objections it may have, including all defenses in Rule 12(b) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 81(c)(2); *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675 n.6 (11th Cir. 2013) (per curiam) (explaining that "removal of an action from state to federal court does not waive any Rule 12(b) defenses"); 5C ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 1395 (3d ed. 2020) ("A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.").

## IV.    CONCLUSION

WHEREFORE, HFIC gives notice that this action has been removed from the

Circuit Court of Jefferson County, Alabama, to the United States District Court for

the Northern District of Alabama, Southern Division.

Date: March 5, 2021            Respectfully submitted,

/s/ *Christopher C. Frost*
Christopher C. Frost
Caleb C. Wolanek
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999
cfrost@maynardcooper.com
cwolanek@maynardcooper.com

Sarah D. Gordon (*Pro Hac Vice* Intended)
William L. Drake (*Pro Hac Vice* Intended)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
T: (202) 429-3000
F: (202) 429-3902
sgordon@steptoe.com
wdrake@steptoe.com

*Attorneys for Defendant*
*Hartford Fire Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Notice of Removal was served on the following by placing a copy of the same in the United States Mail, first-class postage prepaid and properly addressed, this 5th day of March, 2021:

James A. Harris, III
Clyde O. Westbrook, III
HARRIS & HARRIS, LLP
Shipt Tower, Suite 2450
420 20th Street North
Birmingham, AL 35203
T: 205-871-5777
F: 205-871-0029
jamey@harris-harris.com
tres@harris-harris.com
*Attorneys for Plaintiffs*

Fredric L. Fullerton, II
Assistant City Attorney
CITY OF BIRMINGHAM
OFFICE OF THE CITY ATTORNEY—LITIGATION DIVISION
710 20th Street North, Room 600
Birmingham, AL 35203
T: (205) 254-2369
F: (205) 254-2302
flfulle@ci.birmingham.al.us
*Attorney for the City of Birmingham*

/s/ *Christopher C. Frost*
Of Counsel